UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 12-48-HRW

KENTUCKY AUTOMOTIVE CENTER
OF GRAYSON, LLC,                                                                PLAINTIFF,

v.                          **MEMORANDUM OPINION AND ORDER**

NISSAN NORTH AMERICA, INC.,                                          DEFENDANT.

This matter is before the Court upon Defendant's Motion to Dismiss [Docket No. 5]. Defendant seeks dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Court finds dismissal is warranted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the Chapter 11 Bankruptcy proceedings of the Giant Auto Group Ashland, LLC (hereinafter "Giant Auto").[1] Giant Auto was the holder of an automobile dealership known as "Nissan of Ashland" pursuant to an agreement with Defendant Nissan North America, Inc. (hereinafter "Nissan"). As part of the bankruptcy proceedings, on March 5, 2010, the court-appointed chief liquididating officer (hereinafter "CLO") convened an auction of certain assets, including the Nissan dealership [Docket No. 5-2].

Two groups participated in the bidding - the Crawford Group and the Cole Group. The Crawford Group. Notwithstanding that the Crawford Group's bid was the higher of the two, the

---

[1] The Court takes judicial notice of the Bankruptcy Court's proceedings, and records resulting therefrom. *See Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010)(A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one or summary judgment).

CLO determined that the Cole Group's bid was preferable and requested that the Bankruptcy Judge approve the sale of Giant's assets to the Cole Group. The Crawford Group filed an objection in which it claimed that it had been pre-approved as a qualified bidder, was the higher bidder but lost the auction due to fraudulent procedures [Docket No. 5-3]. It described the process as a "sham."

The Bankruptcy Judge Joseph M.. Scott scheduled an evidentiary hearing on the CLO's motion to approve the sale and the Crawford Group's objection for April 6, 2010.

One day prior the hearing, however, the Crawford Group filed a Notice of Withdrawal of its Objection and stated that "evidentiary hearing would be moot" [Docket No. 5-4]. On April 7, 2010 the Judge Scott entered an Order approving the sale [Docket No. 5-2]. In the Order, Judge Scott noted that the Crawford Group's Objection had been withdrawn.

The Crawford Group did not appeal Judge Scott's Order.

Plaintiff Kentucky Automotive Center of Grayson, LLC (hereinafter "KAC") filed the instant action in Carter Circuit Court against Nissan, alleging that the aforementioned bidding process was fraudulent for the same reasons set for in the Crawford Group's Objection. It alleges that Defendant violated the Kentucky Motor Vehicle Sales Act, specifically KRS 190.070 as well as the Kentucky Consumer Protection Act. Specifically KRS 367.170.

Pursuant to 28 U.S.C. ¶ 1332, this matter was Removed to this Court. Nissan seeks dismissal of all claims alleged herein on two grounds: first, that Plaintiff lacks the requisite standing to bring this claim and second, that the doctrine of res judicata bars the claims alleged herein.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *See, Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). For purposes of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). A plaintiff must set forth in the complaint "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). When a plaintiff fails to plead facts supporting entitlement to relief, it is appropriate to grant dismissal pursuant to a Rule 12(b)(6). However, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also, Monette v. Electronic Data Systems, Corp.*, 90 F/3d 1173, 1189 (6th Cir. 1996). Consequently, a complaint will not be dismissed unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint. Because a motion to dismiss is based solely upon the complaint, the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Roth Steel Prods v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).

### III. ANALYSIS

**A.    Plaintiff lacks standing to bring the claims asserted in the Complaint.**

It is axiomatic that a plaintiff must have standing in order to maintain a civil lawsuit against a defendant. In broad terms, standing requires an injury in fact which is traceable to the acts or omissions of the defendant and which is rederessable by a favorable condition. *See generally, Cleveland Housing Renewal Project v. Deutsche Bank*, 621 F.3d 554. When seeking relief pursuant to a particular statute, a plaintiff must be a member of the group of persons intended to be protected by the statute.

In its Complaint, KAC calls into question the propriety of the bidding process leading to the sale of Giant Auto's assets. However, as the records from the Bankruptcy proceedings establish, KAC was not a bidder. As such, it cannot have suffered an injury during the bidding process. As court have noted again and again, a proper party to a lawsuit must show that it is "asserting [its] own legal rights, as opposed to the legal rights of others." *Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*, 713 F.2d 1221, 1225 (6th cir. 1983).

Plaintiff's brief in response to Nissan's motion simply claims that it appeared at the auction and was the highest bidder. These statements obscure the true nature of the entities involved. The record from the Bankruptcy proceeding identify Kentucky Automotive Center of Ashland, LLC, Kentucky Automotive Center of Ashland II, LLC and Ashland Real Estate, LLC - collectively defined as the Crawford Group. It was these three entities, and only these entities, which are identified in the record. That Donald Crawford and Lydia Crawford, two of the Crawford Group's three principals, are also members of KAC is of no moment. Plaintiff's attempted sleigh of hand cannot ignore that these are separate and distinct corporate entities.

4

Simply put, KAC cannot assert rights belonging to the Crawford Group.

Not only does Plaintiff lack standing to pursue this case generally, it also lacks standing to pursue a claim for violation of the Kentucky Motor Vehicle Sales Act. In its Complaint, KAC contends that Nissan's "unreasonable failure to approve [KAC] as an authorized transferee" violates KRS 190.070. However, the statute is limited in its application. KRS 190.062(3) provides:

> [KRS 190.070] shall apply to all persons required to be licensed under the terms herein, and to dealerships and contracts between new motor vehicle dealers and manufacturers, distributors, factory branches, or factory representatives at the time of its passage, and to all such future new motor vehicle dealerships and contracts.

KRS 190.062(3).

KAC is not a Nissan dealer. Nor is it a manufacturer, distributor, factory branch or factory representative. As such, it falls outside of the protections of the statute and any claim it alleges pursuant to the statute is not viable.

Directly on point is *Blair v. General Motors Corp.*, 838 F. Supp. 1196 (W.D. Ky. 1993). In *Blair,* Judge Heyburn specifically found that the protections set forth in KRS 190.047, which is the corollary to KRS 190.070, does not apply to third parties or prospective purchasers. *Id*. at 1200. He explained:

> Plaintiff argues that the word "dealer" should be construed broadly to cover any party seeking to purchase a franchise. However, a fair reading of the statute shows that it is designed to protect dealers in their direct contractual relationships with the manufacturer. The statute does not contemplate the protection of third parties. The statute protects those having a certain relationship, not merely those with a particular *status,* since the dealer needs protection in the direct contractual give and take, not merely in its otherwise unrelated status

5

> as a dealer.
>
> The entire scheme of the legislation beginning in subparagraph 2 wherein it states that "a dealer desiring to sell, transfer or assign all or any portion of his franchise . . ." implies an intention to protect the legitimate, and sometimes unfairly represented, interests of a particular dealer having a direct relationship with the franchisor. In fact, nothing in the statutory language indicates the Kentucky legislature's intention to protect or otherwise provide an administrative remedy for third parties not having a contractual relationship with the manufacturer.

*Id.* at 1199–1200.

The same analysis, focused on protecting dealers under direct contract, applies here. Like KRS 190.047, KRS 190.070(2) is designed to protect a dealer's ability to convey its dealership and prohibits a manufacturer from unreasonably withholding consent to the transfer. As Judge Heyburn reasoned, this protection is for the benefit of the dealer, not third parties. Consequently, as a prospective purchaser, does not have standing under the Kentucky Motor Vehicle Sales Act to bring this action.

Similarly, KAC cannot maintain a private action for violation of the Kentucky Consumer Protection Act. KRS 367.170 makes it unlawful to engage in unfair, false, misleading or deceptive practices in the conduct of trade or commerce. KRS 367.220 provides for a private cause of action for violation of the aforementioned to "persons who have purchased or leased goods or services primarily for personal, family or household purposes." In this case, KAC was not a purchaser. Therefore, it cannot maintain a private right of action under the KCPA.

  **B.  Plaintiff's claims are barred by the doctrine of res judicata.**

The doctrine of res judicata prevents claims which were addressed or could have been addresses in a prior proceeding from being relitigated. *See generally, Fieger v. Corrigan*, 602 F.3d 775 (6th Cir. 2010). "A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir.)(internal citations omitted).

All of the claims that KAC raises herein relate to the bankruptcy proceedings, should have been brought there and were, in fact, filed there initially. KAC Complaint arises entirely from events that occurred in 2010 in the Giant Auto bankruptcy. The gravamen of KAC Complaint is that the *bankruptcy* court's court-appointed CLO wrongfully passed over KAC to award the *bankruptcy* assets to a different bidder during the *bankruptcy* auction. Had the Crawford Group proceeded with its objection, then the Bankruptcy Court and the appropriate appellate authorities would have determined the very issue KAC raises here—that is, whether the CLO selected the appropriate bid. Furthermore, KAC's assertion that the bankruptcy court lacked authority to hear the claims that KAC brings now is baseless since the Crawford Group did, in fact, file those very same objections with the bankruptcy court.

. In *Winget*, Judge Siler found that the plaintiff's claims could have been litigated in an earlier bankruptcy action because the claims raised "in the Complaint are largely identical to the arguments [plaintiff] made in its objection to the Sale Order, which it later withdrew." *Id.* at 576. The same set of facts exists in this case, and KAC's rehashed claims should likewise be barred.

7

KAC argues that res judicata should not apply because the bankruptcy court was not a court of competent jurisdiction to hear the claims that it brings in its current Complaint. That argument fails. A bankruptcy court is competent to hear all claims that affect the bankruptcy estate. *See Winget*, 537 F.3d at 576 ("If [bankruptcy] sale orders were not final, parties could continue to litigate issues regarding the assets long after their sale, which is certainly an outcome worth prohibiting"); *see also Wallenmeyer v. Nat'l City Bank of Kentucky*, 2003 WL 23095674, at *3 (Ky. Ct. App. Dec. 31, 2003) (internal citations omitted) ("A bankruptcy court, in possession of the res, draws in all controversies over title and liens, free from any interference by subsequent actions in a state court, unless there be consent of the bankruptcy court"). KAC is attempting to do just what the Sixth Circuit, in *Winget*, intended to prevent – it is attempting "to continue to litigate issues regarding the [bankruptcy] assets long after their sale." *Winget*, 537 F.3d at 576. Following *Winget*, this attempt will be dismissed.

## IV. CONCLUSION

Finding that Plaintiff's Complaint fails to state a claim upon which relief may be granted, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 5] be **SUSTAINED** and this matter is **DISMISSED WITH PREJUDICE**.

This 22nd day of February, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge